**IN THE COURT OF APPEALS OF IOWA**

No. 16-0765
Filed November 9, 2016

**IN THE INTEREST OF X.Z. AND J.Z.**
**Minor children,**

**E.Z., Father,**
  Petitioner-Appellee,

**E.I., Mother,**
  Respondent-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block, Associate Juvenile Judge.

The mother appeals the termination of her parental rights under Iowa Code chapter 600A.  **AFFIRMED.**

Joseph G. Martin of Swisher & Cohrt, P.L.C., Waterloo, for appellant mother.

Sara A. Kersenbrock of Kersenbrock Law Office, Waterloo, for appellee father.

John W. Harris of Law Offices of C. Kevin McCrindle, Waterloo, as guardian ad litem for minor children.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

The mother appeals from the district court's order terminating her parental rights to two of her children, X.Z., age eleven, and J.Z., age ten. The children's father initiated this action in December 2015.

We conduct a de novo review of termination proceedings under chapter 600A. *See In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010). We defer to the factual findings of the district court, especially witness-credibility findings, but we are not bound by them. *See In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). In termination proceedings, the best interests of the children involved are "the paramount consideration," but we also give "due consideration" to the interests of the children's parents. *See* Iowa Code § 600A.1 (2015). The parent petitioning for termination has the burden to show the other parent has abandoned the child. *See id.* § 600A.8(3)(b); *G.A.*, 826 N.W.2d at 129. The termination findings must be based on clear and convincing proof. Iowa Code § 600A.8.

Here, the district court terminated the mother's parental rights pursuant to Iowa Code section 600A.8(3)(b) and (4). We will uphold the termination if either one of these grounds is established by clear and convincing evidence. *See In re Voeltz*, 271 N.W.2d 719, 723 (Iowa 1978).

After reviewing the record, we find clear and convincing evidence to support the court's termination of the mother's parental rights under section 600A.8(3)(b). That section provides, in part:

> If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated

contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:

(1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.

(2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.[1]

Iowa Code § 600A.8(3)(b).

In making our determination, we do not consider the subjective intent of the mother. *See* Iowa Code § 600A.8(3)(c) (stating the subjective intent of the parent "does not preclude a determination that the parent has abandoned the child").

"[T]he threshold element of 'substantial and continuous or repeated contact' is economic contributions." *In re K.W.*, No. 14-2115, 2015 WL 6508910, at *3 (Iowa Ct. App. Oct. 28, 2015) (citing *In re W.W.*, 826 N.W.2d 706, 710 (Iowa Ct. App. 2012) (discussing "predicate language of section 600A.8(3)(b)")). Support of the child in a reasonable amount is not limited to court-ordered support. *See W.W.*, 826 N.W.2d at 710 (noting that a parent's failure to make court-ordered payments are the subject of section 600A.8(4)); *see also In re T.K.*, No. 16-0029, 2016 WL 4384869, at *2 (Iowa Ct. App. Aug. 17, 2016) (finding the father had not made a reasonable contribution to the support of the child even though the father was current on his court-ordered obligation to pay ten dollars each month).

---

[1] Section 600A.8(3)(b) also contains a third subsection which is not at issue in this case.

In the parties' 2013 dissolution decree, the mother was ordered to pay $25 per week per child in support. Although she consistently made the ordered payments in the time leading up to the termination hearing—for all of 2015 and part of 2014—she still owed $2499.63 in back support. The mother argued that the amount she was in arrears was largely from the time when she was in jail and unable to meet her obligation, but "[t]he general rule is that incarceration provides no excuse for an absent parent's failure to provide the comfort, guidance, and support owed by a parent to [her] children." *In re A.M.*, No. 02-1085, 2003 WL 21696957, at *2 (Iowa Ct. App. July 23, 2003) (citing *In re J.L.W.*, 523 N.W.2d 622, 625 (Iowa Ct. App. 1994)). Additionally, the mother testified that while she currently had a full-time job at a fast-food restaurant, she had recently filed paperwork to have the amount of income withheld from each paycheck reduced and she expected the reduction to take place soon.

The parents were divorced in mid-2013. At the time of the dissolution, the mother agreed the father would receive physical care of the children because she was incarcerated for 190 days for a conviction for driving while barred. The mother remained in jail until March 2014; there is no evidence in the record that she maintained contact with the children during the time she was incarcerated. The mother maintained regular contact and visits with the children after her release from jail until May 2015. At that time, the Iowa Department of Human Services (DHS) got involved with the mother and her youngest child—that child is not at issue in this case—after both tested positive for methamphetamine. Since DHS became involved with the mother, she has not maintained monthly contact with either the children or the father. *See* Iowa Code § 600A.8(3)(b)(1), (2). At

the hearing, the mother's attorney asked if she had any sense of how often she contacted the children. The mother answered:

> Every holiday. I've sent text messages. I've contacted—I've tried to call [the children's stepmother] numerous times and usually they don't answer their phone. I've—and even if I didn't try to contact them, they've had my phone number this whole time and not one time did they try to contact me . . . .

In determining whether the mother has maintained at least monthly contact, we do not consider the mother's claim that the father and stepmother have not contacted her about the children. *See id.* § 600A.8(3)(c) ("In making a determination [about abandonment], the court shall not require a showing of diligent efforts by any person to encourage the parent to perform the acts specific in paragraph 'a' or 'b'."). At the hearing, the father testified that his current wife has tried to set up visits with the mother and the children, including church visits and visits with extended family, and the mother is the one who failed to show. He also testified the mother was inconsistent with making contact with the children, often failing to call the children after she told them she would. Additionally, the maternal grandmother and grandfather—who had guardianship of the mother's youngest at the time of the hearing—testified that they continued to see the older children and that they have never been told to keep the children away from the mother during those visits.[2]

Although the mother blames the father for her lack of contact with the children and for his lack of communication with her, we do not find her testimony credible. The district court found the mother "was not attending visitations

---

[2] The grandparents also testified the mother has not maintained monthly contact with them, in spite of the mother's testimony to the contrary.

regularly" or "complying with agreed upon visitation schedules." Additionally, we note that the district court did not make a finding that the father was preventing the mother from seeing the children; rather, the court found, "Because of [the mother's] chaotic lifestyle it is clear that [the father] has not encouraged contact between the children and [the mother] for the past few years." We believe the father has established a statutory ground for termination pursuant to Iowa Code section 600A.8(3)(b).

We now turn to the question of whether the father has proved that termination of the mother's rights is in the best interests of the children. *See In re R.K.B.*, 572 N.W.2d 600, 602 (Iowa 1998). In doing so, we give "due consideration" to the mother's interests. *See* Iowa Code § 600A.1.

At the time of the hearing, the mother had three pending theft charges. She testified she believed she would make plea deals which would allow her to plead guilty to only two of the charges in return for probation and one ten-day jail sentence. It is unclear if the mother would obtain as lenient sentences as she expected. Additionally, the mother testified that she had been diagnosed as bipolar, schizophrenic, and manic depressive, and she was choosing to no longer take her prescribed medication. The father, the maternal grandmother, and the maternal grandfather testified that the children no longer trust their mother. They are tired of being disappointed by her when she fails to follow through with promised phone calls or visits, and they tend to regress in school and behavior when those events occur. The children's stepmother has been a constant presence in their life, and she intends to adopt the children if the mother's rights are terminated. Considering all of the above, we believe the father has

established that termination of the mother's parental rights is in the best interests of the children.

We affirm the district court's termination of the mother's parental rights to her children X.Z. and J.Z.

**AFFIRMED.**